# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARK MCGEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:20-cv-00368** |
| **v.** | ) | **Judge Campbell / Frensley** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **ACTING COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 25. Plaintiff has filed an accompanying Memorandum. Docket No. 25-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 26. Plaintiff has filed a "Response to Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record." Docket No. 27.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be

---

[1] Kilo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing Andrew M. Saul in that role. Kijakazi is therefore appropriately substituted for Saul as the defendant in this action, pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

AFFIRMED.

# I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on June 23, 2017, alleging that he had been disabled since May 1, 2017, due to eyesight and hearing issues, back and leg pain, high blood pressure, bladder cancer, diabetes, emphysema, heart issues, and depression. *See, e.g.,* Docket No. 23 ("TR"), pp. 212, 215, 227. Plaintiff's application was denied both initially (TR 130) and upon reconsideration (TR 149). Plaintiff subsequently requested (TR 161-62) and received (TR 78-93) a hearing. Plaintiff's hearing was conducted on March 6, 2019, by Administrative Law Judge ("ALJ") David Ettinger. TR 79. Plaintiff and vocational expert ("VE"), Melissa Neel, appeared and testified. *Id.*

On May 22, 2019, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 40-57. Specifically, the ALJ made the following findings of fact:

> **1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.**
>
> **2.     The claimant has not engaged in substantial gainful activity since May 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).**
>
> **3.     The claimant has the following severe impairment: eviscerated right eye. (20 CFR 404.1520(c)).**
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**
>
> **5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual**

2

functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he cannot perform work which requires depth perception and cannot more than occasionally be exposed to hazardous work environments.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 3, 1959 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

TR 45-52.

On June 10, 2019, Plaintiff timely filed a request for review of the hearing decision. TR 209-11. On April 9, 2020, the Appeals Council issued a letter declining to review the case (TR 1-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's

findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.      Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

4

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller,* 811 F.3d at 833 (6th Cir. 2016), *citing Gentry*, 741 F.3d at 722 (internal citations omitted); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

**B.      Proceedings at The Administrative Level**

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes

5

previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir.

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a non-exertional impairment, and then only when the claimant's characteristics identically match the of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and non-exertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff contends that the ALJ:

1. **Did not consider or mention the opinions of Dr. James Renfro;**

2. **Made no mention of records of medical appointments occurring after the hearing or the records' effect on the Residual Functional Capacity ("RFC");**

3. **Inaccurately stated that there was no new material evidence to his previous Unfavorable Decision dated January 10, 2017,**

notwithstanding new impairments to Plaintiff's knee and
medical evidence from Dr. Renfro;

4.     Accepted State agency consultants' opinions although they
occurred prior to the aforementioned knee injury, and one
consultant, Dr. Rita Misra, lacked specialization in
orthopedics;

5.     Incorrectly considered the records of Dr. Allos and
misrepresented that the claimant could perform work at all
exertional levels;

6.     Noted the claimant's medical records include stamina,
syncope, lethargy issues, and urological problems, but did not
properly consider these conditions;

7.     Noted the claimant ambulated independently on March 19,
2019, though the hearing occurred on March 6, 2019, and the
claimant used a cane at that time;

8.     Incorrectly: (a) stated the claimant last saw Dr. Lieberman May 27,
2017, when the claimant saw Dr. Lieberman last on April 2, 2019, (b)
stated Dr. Lieberman "refer[red] to no abnormal medical findings
supporting his opinions nor provided any explanation between the
claimant's impairments and the reported limitations in the [Medical
Source Statement]," and (c) accepted the reports of the State agency
medical consultants instead of Dr. Lieberman's records; and

9.     Inappropriately assigned an RFC of "all exertional levels"
while the evidence shows that Plaintiff cannot perform even
medium level work.

Docket No. 25-1, pp. 8-11.

Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's

decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript
of the record, a judgment affirming, modifying, or reversing the

8

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. New and Material Evidence: March 2019 Medical Records from James Renfro

Plaintiff argues that the ALJ "did not consider or even mention the opinions of Orthopedic [Doctor] James Renfro . . . which should have led to a Fully Favorable Decision being issued pursuant to 20 CFR 404.1527 . . . ." Docket No. 25-1, p. 8.

Defendant responds that while some evidence was submitted during the 30-day period that the ALJ established for the record to be left open after the hearing, it is unclear whether Dr. Renfro's Medical Source Statement ("MSS") was submitted within the timeframe allowed, and that Plaintiff does not assert that a timely submission was made. Docket No. 26, p. 9, *citing* TR 57, 83. Defendant concedes that the MSS was not listed as additional evidence in the Notice of Appeals Council Action. *Id.*, *citing* TR 2. But, Defendant contends, a remand pursuant to sentence six of 42 U.S.C. § 405(g) is not appropriate because this evidence is not new and material. *Id.* at 9-10.

9

Plaintiff replies that Dr. Renfro's MSS was timely submitted and received by Nashville Office of Hearings Operations ("OHO") on March 29, 2019. Docket No. 27, p. 1. Plaintiff argues that, contrary to 20 CFR 404.1527, the ALJ did not consider or explain the persuasiveness of Dr. Renfro's opinions. *Id.* at 3.

Dr. Renfro's MSS appears to have been submitted by Plaintiff to Nashville OHO on March 29, 2019. TR 77. It was not admitted and exhibited by the ALJ or Appeals Council. *See* TR 2. The Regulations provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated and review granted where the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence. 20 CFR § 416.1470. After reviewing the record as a whole, the Appeals Council determined that there was no basis under the Regulations for granting Plaintiff's review. TR 1. In making this determination, the Appeals Council explicitly stated that the additional evidence that was submitted and exhibited "does not show a reasonable probability that it would change the outcome of the decision." TR 2.

Remand for consideration of new and material evidence is appropriate only when the claimant shows that: (1) new, material evidence is available; *and* (2) there is good cause for the failure to incorporate such evidence into the prior proceeding. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).

Plaintiff has not shown new material evidence exists because he cannot establish that Dr. Renfro's MSS is material. "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988), *citing Carroll v. Califano*, 619 F.2 d

10

1157, 1162 (6th Cir. 1980). Plaintiff has failed to satisfy this burden.

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). According to item eight of Dr. Renfro's MSS, the claimant's limitations had not lasted, and were not expected to last, longer than 12 or more consecutive months. TR 77.

Therefore, inclusion of Dr. Renfro's MSS would not have been sufficient to establish entitlement to benefits and would not have changed the ALJ's determination. Even if the MSS had been part of the record before the ALJ, "substantial evidence" supports the ALJ's findings and inferences. The ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and Vocational Expert, Melissa Neel, observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision. TR 43-53. Thus, Plaintiff cannot establish materiality because there is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim" if the MSS had been part of the record before the ALJ. *Sizemore*, 865 F.2d at 711.

Plaintiff has failed to demonstrate that his new medical evidence was material. Accordingly, remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted.

## 2. ALJ's Development of the Record: Medical Evidence from Doctors Allos and Kha

Plaintiff argues that the ALJ was aware the claimant had upcoming medical appointments following the hearing but did not mention the medical records of Drs. Suhail Allos and Victor Kha, which were submitted within the time period allowed by the ALJ, or the effect of those records on the RFC. Docket No. 25-1, p.8. In his decision, the ALJ discusses records submitted within the 30-

11

day window from Southern Hills Medical Center, where Drs. Kha and Allos practiced as the claimant's physicians. TR 46-47, *citing* TR 57, 61, 65. Specifically, the ALJ noted Dr. Kha's findings (Exhibit B16F) as a consulting physician that the claimant was "taking no medication for [COPD] . . . denied dyspnea on exertion, coughing or wheezing…and had no exacerbations in the past year." TR 46, *citing* TR 687. Upon consideration of the same medical records, the Appeals Council determined that the additional evidence "does not show a reasonable probability that it would change the outcome of the decision." TR 2.

The duty of the ALJ is to "fully and fairly develop the administrative record," and where the evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether or not the listing is met. *Johnson v. Sec'y of Health & Human Servs.,* 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence. *See, e.g., Morehead Marine Servs. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998). This is because there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision. *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).

The Findings of Fact and Conclusions of Law section of the ALJ's decision in the case at bar specifically addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these were considered. TR 45-52. It is clear from the ALJ's detailed, articulated rationale that, although there is evidence which could support the Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with the Plaintiff's allegations. This is within the ALJ's province. 20 CFR § 1520c(c)(2).

The ALJ developed the evidence and adequately explained the reasons and basis for his conclusions. Because his findings are supported by "such relevant evidence as a reasonable mind

would accept as adequate to support the conclusion," substantial evidence exists, and the decision of the ALJ must stand. *Her*, 203 F.3d at 389.

### 3. Severity of Plaintiff's Knee Injury and 2018 Records of Doctor Renfro

Plaintiff argues that the ALJ's conclusion that the claimant's 2019 application contained no new evidence material to the previous 2017 Unfavorable Decision is inaccurate because there are records of lower extremity injuries that occurred in 2018. Docket No. 25-1, pp. 8-9. Specifically, he argues that records from Dr. Renfro following an assault on the claimant constitute material evidence that should have been considered. *Id.* The ALJ discussed previous records related to Plaintiff's June 10, 2018 knee injury, stating:

> Regarding his left knee injury, evidence shows that on June 10, 2018, the claimant's son-in-law assaulted him, which resulted in a left knee injury. (Exhibit Bl2F/). On July 20, 2018, the claimant underwent a left knee arthroscopic surgery. By August 27, 2018, he was told to start light exercise, to gradually advance his activities and return in four weeks. The record contains no subsequent orthopedic treatment records, but on March 18, 2019, it was noted that the claimant was ambulating independently. (Exhibit Bl6F/11). Notably, the evidence does not support a finding that the claimant's left knee injury will result in significant work limitations lasting for 12 consecutive months. As such, I have concluded that based upon the medical evidence of record, that neither of these medically determinable impairments, considered singly or in combination, cause more than minimal limitation on the claimant's ability to perform basic work activities and are likewise determined as non-severe.

TR 46, *citing* TR 653-68, 691.

The ALJ's conclusion that the claimant's 2019 application contained no new material evidence is reflected in his finding that Plaintiff's lower extremity injury was non-severe. *Id.* At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." 20 CFR §

13

404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. Conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as a *de minimis* hurdle in the disability determination process meant to screen out groundless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ in the case at bar found that Plaintiff's eviscerated right eye was a severe impairment but did not find that the knee injury was a severe impairment. TR 46. After explicitly finding at step two that Plaintiff had an impairment or combination of impairments that was severe, the ALJ continued his evaluation of the evidence and completed the sequential evaluation process. TR 46-52. Because the ALJ found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, declining to find Plaintiff's knee injury to be severe cannot constitute reversible error. *See Maziarz*, 837 F.2d at 244. Accordingly, Plaintiff's argument on this point fails.

### 4. Medical Opinion Evidence from State Agency Consultants

Plaintiff maintains that the ALJ erroneously "accepted the State Agency's consultants' opinions as to RFC" even though the consultants' reviews took place prior to the lower extremity injuries. Docket No. 25-1, p. 9. Plaintiff also asserts that one consultant, Reeta Misra, is listed as a

14

pediatric endocrinologist on AMA Doctor Finder, presumably to point out that the consultant does not specialize in treating knee injuries. *Id.*

Defendant responds that the consultants' opinions were consistent with the objective findings elsewhere in the ALJ's decision and that, per agency regulations, administrative law judges must consider medical evidence from these consultants. Docket No. 26, pp. 10-11. Defendant further asserts that under agency regulations and Sixth Circuit case law, the ALJ acted properly by considering prior medical opinions of state consultants along with "any relevant changes in the claimant's condition." *Id.* at 11-12 (internal quotation marks omitted).

Plaintiff replies that the State agency consultants did not have records pertaining to subsequent knee impairments and the ALJ did not follow regulations by failing to address the persuasiveness of medical evidence from surgeon Dr. Renfro. Docket No. 27, pp. 2-3.

As a preliminary matter, Plaintiff notes that Dr. Misra is a pediatric endocrinologist but fails to explain why this constitutes error or why this doctor could not render an objective medical opinion regarding Plaintiff's condition. *See* Docket No. 25-1, p. 9. In addition, for the reasons outlined in subsections 1 and 3 above, medical evidence from Dr. Renfro was determined to be immaterial or discounted because Plaintiff's injury was non-severe.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017 and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 CFR §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html.

Plaintiff filed his application after March 27, 2017. TR 215. As such, Plaintiff's case is governed

by the rules that were implemented on March 27, 2017. *See* 20 CFR § 404.614 (generally, an

application for benefits is deemed filed on the day it is received by an SSA employee). The new

regulations provide as follows:

**(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2)* . . . . .

**(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

**(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

**(2) Most important factors.** The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we

will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

**(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

**(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

17

**(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

**(d) Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 CFR § 404.1520c.

In this case, the ALJ evaluated the supportability and consistency of the consultants' opinions along with other medical evidence, including a treating source statement letter from

Fred Shanks, who had been treating the claimant for vision problems for almost ten years as of

May 14, 2018. TR 50-51, *citing* TR 652. Dr. Shanks's letter regarding Plaintiff stated as follows:

> Mr. Mcgee has been in my care for vision problems for almost ten years. He does not have useful vision in his right eye. This has developed over several years. This condition restricts his depth perception to such an extent that it is not safe for Mr. Mcgee to operate any motorized vehicle or perform other task [*sic*] requiring accurate depth perception.

TR 652.

When discussing Dr. Shanks's letter in conjunction with the consultants' medical

opinions, the ALJ stated: "Such findings are consistent with objective medical evidence as

described above, the claimant's history of an eviscerated right eye, as well [as] Dr. Shank's

medical source statement at Exhibit B11F noting right eye depth restrictions, which I also

accept." TR 50-51. The ALJ also focused on medical evidence provided subsequent to the

claimant's lower extremity injury in 2018, stating:

> In November of 2018, a colonoscopy revealed large ascending and transverse polyps, however his pathology report was negative. He was nonetheless referred for surgery in January of 2019, to have the polyps removed, however the claimant did not immediately follow-up for surgical consultation. (Exhibits B13F/4-8, B14F/1, B15F/1-2). On March 18, 2019, the claimant underwent a surgical hemicolectomy to have the polyps removed and restricted to no pushing/pulling or lifting over five pounds for six-weeks [*sic*]. (Exhibit B16F/1, 6). An examination following on March 19, 2019, just one day following his procedure, the claimant denied bruising or swelling of the skin, blurred or loss of vision, productive cough, wheezing, shortness of breath, dizziness, headaches, and dysuria or chest pain. He did report abdominal pain "postoperative" and thoracic pain "bilateral clavicles," but denied extremity pain or joint swelling. Notably he ambulated independently. During his physical examination, he was able to move all extremities, with no clubbing or edema. His musculoskeletal examination was normal. There were no neurological deficits and his mood, insight, judgment and affect were all normal. (Exhibit B16F/12-14). The following month, Dr.

> Liberman [*sic*] completed a medical source statement on April 2, 2019, and diagnosed the claimant with osteoarthritis of the left knee, degenerative disc disease of the lumbar, chronic obstructive pulmonary disease, edema, depression and syncope; and inconsistent with the claimant's treatment history, limited him to sedentary work exertion. (Exhibit B17F/1-4).

TR 49-50.

The new regulation states that an ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 CFR § 404.1520c(a). The ALJ considered the MSS of Dr. Lieberman submitted in 2019, which was subsequent to the claimant's lower extremity injuries. TR 51. In discounting Dr. Lieberman's MSS, the ALJ found that Dr. Lieberman's opinion was not supported by his treatment records or the objective medical evidence and was inconsistent with Plaintiff's treatment record. TR 51.

Under agency regulations, "Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 CFR § 404.1513a(b)(1). Pursuant to these regulations, the ALJ properly considered the findings of the State agency consultants and found they were "consistent with objective medical evidence." TR 50. By fully considering the claimant's records, the ALJ fulfilled his duty under the new regulations and properly evaluated all medical evidence. 20 CFR § 404.1520c.

## 5. Dr. Allos's Reports and the Claimant's Residual Functional Capacity ("RFC")

Plaintiff maintains that Dr. Allos's records indicate an RFC different from the RFC determined by the ALJ, who found the claimant could perform work at all exertional levels. Docket

No. 25-1, pp. 9-10.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR §404, Subpt. P, App. 2 § 200.00(c). Regarding the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC "to perform a full range of work at all exertional levels," but is limited to work that does not require depth perception or that does not expose the claimant to hazardous work environments more than occasionally. TR 47.

The ALJ explained:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned has also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

TR 47-48.

In so finding, the ALJ considered evidence of the claimant's medical records, including those submitted during the 30-day window for additional evidence. TR 54-57. Specifically, regarding the claimant's condition, the ALJ stated:

21

> Notably on March of 2019, [Plaintiff] was able to move all
> extremities, with no clubbing or edema. His musculoskeletal
> examination was normal. Three were no neurological deficits and his
> mood, insight, judgment and affect were all normal, and on the same
> date [he] denied dyspnea on exertion. (Exhibit B2F, B3F, B5F, B7F,
> B10F, B12F, B16F).

TR 51.

The ALJ thus evaluated the medical and testimonial evidence of record, and ultimately determined that Plaintiff retained the RFC to perform work at all exertional levels, compromised by non-exertional limitations. TR 52. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

## 6. Substantial Evidence: Medical Records of Stamina, Syncope, and Lethargy Issues

Plaintiff contends that the ALJ noted but failed to properly consider: (1) medical records from Dr. Lieberman describing the claimant as having "no stamina," (2) Plaintiff's syncope exacerbation on April 1, 2018, and (3) records from Plaintiff's urologist who described lethargy and cysto/urethral dilation. Docket No. 25-1, p. 10.

Defendant responds that:

> Plaintiff highlights various symptoms he reported, presumably for the
> purpose of asserting that the residual functional capacity finding
> should have been more restrictive. For instance, Plaintiff notes that
> records show he reported a lack of stamina, fatigue, or dizziness,
> among other symptoms. Pl.'s Br. at 8-10. But a recitation of
> symptoms does not alone support further limitations.

Docket No. 26, p. 7, *citing* Docket No. 25-1; *see* 20 CFR § 404.1529.

Defendant further argues that the claimant's vision issues were accounted for by the ALJ, and though the claimant was diagnosed with other ailments, the ALJ properly considered them and did not find them be severe impairments. Docket No. 26, p. 8. Therefore, "[s]ubstantial evidence supports the ALJ's residual functional capacity finding." *Id.*

22

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her*, 203 F.3d at 389. "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. Even if the evidence could also support a different conclusion, the ALJ's decision must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389. If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst*, 753 F.2d at 519.

As has been demonstrated in the statements of error above, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE. TR 43-53. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that "the claimant has the residual functional capacity to perform a full range of work at all exertional levels" with limitations on work requiring depth perception or hazardous work environments. TR 47. Because substantial evidence supports the ALJ's determination, the ALJ's decision must stand. *Her*, 203 F.3d at 389.

**7. The Claimant's Ambulation Based on the Medical Records of Dr. Kha**

Plaintiff argues that the "ALJ notes the claimant 'ambulated independently on 3/19/2019 when in fact the hearing was held some 2 weeks earlier on 3/6/2019." Docket No. 25-1, p. 10. In

23

addition, Plaintiff maintains that the claimant was using a cane at the hearing, which was noted by the ALJ. *Id.*

Plaintiff erroneously concludes that the ALJ's opinion that the claimant "ambulated independently" originates from the ALJ's observations during the hearing, when in fact the ALJ's opinion refers to the precise language of medical records authored by Dr. Kha on March 19, 2019. TR 49-50; 691. The ALJ's conclusion that Plaintiff could ambulate independently was based on objective medical evidence from March 19, 2019, which occurred two weeks after the hearing. *Id.* Therefore, the ALJ was not in error when he stated that Plaintiff could ambulate independently as of March 19, 2019.

## 8. The ALJ Properly Considered Dr. Lieberman's Records and State Agency Consultant Opinions

Plaintiff contends that the ALJ incorrectly stated Plaintiff last saw Dr. Lieberman on May 26, 2017, when in fact the claimant last saw Dr. Lieberman on April 2, 2019. Docket No. 25-1, p. 10. Plaintiff further argues "the ALJ incorrectly states that Dr. Lieberman refers to no abnormal medical findings supporting his opinions nor provided any explanation between the claimant's diagnosed impairments and the reported limitations in the MSS" despite Dr. Lieberman's reference to the claimant's knee, back, respiratory, and other issues. *Id.* (emphasis omitted). Plaintiff last contends that instead of accepting the opinions of Dr. Lieberman, the ALJ accepted the State agency consultants' reviews, which occurred prior to the above ailments. *Id.* at 10-11.

Defendant responds that the "ALJ was correct that Dr. Lieberman did not include any narrative explanation to support the limitations given," and it was therefore proper for the ALJ to discount these findings. Docket No. 26, p. 13.

Plaintiff replies that, while the ALJ considered Dr. Lieberman's MSS, the ALJ "instead

24

relied upon the opinions of non-examining state agency consultants" who had no records of Plaintiff's knee injuries. Docket No. 27, p. 2. Furthermore, Plaintiff contends the ALJ did not consider or explain the persuasiveness of the opinions, per 20 CFR § 404.1520c(b)(2). *Id.* at 2-3.

The ALJ clearly noted the claimant's April 2, 2019 assessment from Dr. Lieberman. TR 51 ("I note the post hearing submission of an April 2, 2019 functional assessment form from Dr. Scott Lieberman . . . "). Plaintiff appears to misconstrue the ALJ's choice of words ("Dr. Lieberman *last* examined the claimant on May 27, 2017") to mean that May 27, 2017 was Dr. Lieberman's *final* examination. TR 51 (emphasis added). In reality, given that the ALJ noted the April 2, 2019 assessment, it appears that the ALJ meant that May 27, 2017 was Dr. Lieberman's *previous* examination. *Id.*

Under the new regulations, an ALJ should consider medical evidence's supportability and consistency. See 20 CFR § 404.1520c(b)(2). The ALJ clearly noted Dr. Lieberman's MSS and examination submitted in 2019, but found that Dr. Lieberman's opinion was not supported by Plaintiff's treatment records or the objective medical evidence, and that the "extreme limitations" listed in his assessment were inconsistent with Plaintiff's treatment record. TR 51. Further, the ALJ found that "Dr. Lieberman refers to no abnormal medical findings supporting his opinions. He provides no explanation for any connection between the claimant's diagnosed impairments and the reported limitations." *Id.*

The ALJ also considered the opinions of the State agency medical consultants and found that they were "consistent with objective medical evidence." TR 50. The new regulation states that an ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 CFR § 404.1520c. Under agency regulations, "Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to

25

§§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 CFR § 404.1513a(b)(1).

Pursuant to these regulations, the ALJ properly considered the findings of the State agency consultants and found they were "consistent with objective medical evidence." TR 50. By fully considering Plaintiff's records, the ALJ fulfilled his duty under the new regulations and properly evaluated all medical evidence. 20 CFR § 404.1520c.

## 9. Exertional Level Findings by the ALJ on the Claimant's RFC

Plaintiff maintains that the ALJ's RFC assessment that "the claimant could perform work at all exertional levels…flies in the face of reality" because Plaintiff cannot even "perform medium work with the impairments he has with his knee alone…according to his treating physicians…" Docket No. 25-1, p. 11 (emphasis omitted).

Defendant responds that the findings on Plaintiff's physical examination "support the ALJ's finding that this knee impairment was non-severe." Docket No. 26, p. 7 (citations omitted). Defendant further argues that substantial evidence supports the ALJ's conclusion that Plaintiff's injury would not result in significant limitations lasting longer than twelve months. *Id.*

Determining a claimant's limitations for purposes of establishing an RFC occurs in steps four and five of the sequential evaluation process and requires consideration of the combined effect of the claimant's impairments: mental and physical, exertional and non-exertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920.

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a

26

claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC "to perform a full range of work at all exertional levels," but with limitations on hazardous work environments and work requiring depth perception. TR 47. The ALJ explained:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned has also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

TR 47-48.

In so finding, the ALJ considered Plaintiff's medical records, including the records from March 2019 reflecting that Plaintiff was "able to move all extremities, with no clubbing or edema." TR 50. Specifically, it was noted that Plaintiff ambulated independently. *Id.*

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's reported level of activity, and ultimately determined that Plaintiff retained the RFC to perform work at all exertional levels with additional limitations. TR 47. The ALJ properly evaluated the evidence in reaching this RFC determination in accordance with the regulations. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920.

27

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

28